IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 25, 2017, at Knoxville

## MONTERIOUS BELL v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 11-02524          James C. Beasley, Jr., Judge

_____

## No. W2016-01709-CCA-R3-PC

_____

The petitioner, Monterious Bell, appeals the dismissal of his post-conviction petition, arguing the post-conviction court erred in dismissing the petition as time-barred. Following our review, we conclude the petition was timely filed. The judgment of the post-conviction court is reversed and the matter remanded for consideration of the post-conviction petition in accord with the Post-Conviction Procedure Act.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed; Case Remanded**

J. Ross Dyer, J., delivered the opinion of the court, in which Alan E. Glenn and Robert H. Montgomery, Jr., JJ., joined.

Monterious Bell, Henning, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Karen Cook, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

This post-conviction appeal stems from the petitioner's participation in a home invasion on November 1, 2010. The petitioner hired trial counsel, and proceeded to trial where he was convicted of aggravated burglary and sentenced to fifteen years in confinement. Subsequent to trial, the trial court ordered trial counsel to represent the petitioner on direct appeal where counsel challenged the sufficiency of the evidence

supporting the petitioner's conviction for aggravated burglary. This Court summarized the underlying facts leading to the petitioner's conviction as follows:

The State's proof at trial showed that on the morning of November 1, 2010, Odella McKinnon was at home preparing to take a bath when she heard the doorbell and then "intense beating" on her iron front door. Ms. McKinnon immediately began dressing. As she left the bathroom to open the front door, she heard someone "beating" on the back door, and she noticed a tan Toyota automobile backed into her driveway. Before she could react, she heard "cracking and breaking" on the back door. Ms. McKinnon then proceeded directly to her bedroom and retrieved her handgun. As Ms. McKinnon approached the back door, the door "flew open" and two men rushed inside. Ms. McKinnon fired a single gunshot, and the two men turned and fled. Ms. McKinnon testified that she got "a good quick look" at the two men, and she stated that she had no trouble seeing their faces because it was "a sunny day." At trial, Ms. McKinnon described the first man, later identified as the defendant, as having light skin and standing between five feet, eight inches, and five feet, ten inches in height, and she described the second man as heavier and bald with darker skin.

Ms. McKinnon called 9-1-1, and Memphis Police Department ("MPD") Officer Martrell Boswell arrived at the scene two to three minutes after receiving the call from dispatch. Upon his arrival, Officer Boswell observed a black male, the defendant, standing by the driver's door of the tan Toyota parked in Ms. McKinnon's driveway. When the man noticed Officer Boswell's unmarked police vehicle approaching, he "crossed the street and attempted to gently knock on the door" of a neighbor's house. Officer Boswell then detained the defendant in the front yard of the neighbor's house. After other officers arrived at Ms. McKinnon's residence, Officer Boswell had the defendant stand outside Ms. McKinnon's house, and Ms. McKinnon positively identified the defendant as the first of the two men who had just broken into her home. Ms. McKinnon admitted that, at the preliminary hearing, she initially misidentified the second male who had broken into her home, but, at trial, she was adamant that she had never misidentified the defendant.

MPD Officer Patricia Turnmire photographed, among other things, a footprint on the back door of Ms. McKinnon's house and the bottoms of the shoes the defendant was wearing on November 1. Based on the ridges on the defendant's shoes, Officer Turnmire believed the defendant's shoes "to

be a match" to the footprint on Ms. McKinnon's back door. Officer Boswell, a self-described "shoe connoisseur," testified that the defendant was wearing Nike "Air Force 1" athletic shoes when he was taken into custody and that the treads on those shoes matched the footprint left on the back door. Officer Boswell testified that, when the defendant's accomplice, Bryant Johnson, was arrested two hours later, he was wearing Nike "Air Max" shoes rather than "Air Force 1" shoes and that the treads on the two types of shoes were different.

Mr. Johnson testified that he had known the defendant since childhood and that, on November 1, the defendant picked him up in a tan Toyota Camry owned by the defendant's girlfriend. After the two men smoked some marijuana, the defendant drove through Ms. McKinnon's neighborhood looking for houses to burglarize. The defendant backed the Camry into Ms. McKinnon's driveway, and the defendant knocked on the front door. When he received no answer, the men proceeded to the back door and knocked. The defendant then "kicked the door in." Mr. Johnson entered the house just behind the defendant. Mr. Johnson "heard a shot," and both men fled from the house. Mr. Johnson was arrested later that day, and he admitted that he was wearing Nike "Air Max" shoes at the time of his arrest. He recalled that the defendant was wearing Nike "Air Force 1" shoes at the time of the burglary.

With this evidence, the State rested. Following the trial court's denial of the defendant's motion for judgment of acquittal and a *Momon* colloquy, the defendant elected not to testify but did choose to present proof. MPD Officer Joshua Leslie testified that he interviewed Mr. Johnson following his arrest and that Mr. Johnson had stated, among other things, that his accomplice had "kicked in the door" at Ms. McKinnon's residence. Officer Leslie also testified that Mr. Johnson's shoes did not match the shoe print on Ms. McKinnon's door.

Based on this evidence, the jury convicted the defendant as charged of aggravated burglary. Following a sentencing hearing, the trial court sentenced the defendant as a career offender and imposed a sentence of 15 years' incarceration, to be served consecutively to his sentences in a number of other cases.

*State v. Monterious Bell*, No. W2013-01592-CCA-R3-CD, 2015 WL 513591, at *1-2 (Tenn. Crim. App. Feb. 5, 2015), *perm. app. denied* (Mar. 23, 2016) (internal footnotes

omitted).  After our review, this Court upheld the rulings of the trial court, noting the evidence produced at trial was sufficient to support the petitioner's conviction. *Id.* at *3.

The petitioner then made several procedural missteps after this Court affirmed his conviction on February 5, 2015.  First, the petitioner failed to timely file an application for permission to appeal to the Tennessee Supreme Court.  Absent an application to our supreme court, this Court issued the mandate on April 27, 2015.  After the mandate issued, the petitioner filed a *pro se* application for permission to appeal and a motion for appointment of counsel on December 14, 2015.  At the time, trial counsel was still the petitioner's counsel of record, as he failed to withdraw from the petitioner's case after this Court affirmed the petitioner's conviction on direct appeal.  On January 25, 2016, our Supreme Court ordered trial counsel to show cause as to why the petitioner's application for permission to appeal should not be dismissed as untimely.[1]  According to trial counsel, the petitioner did not have any meritorious claims to pursue on which to support an application for permission to appeal and, therefore, he and the petitioner agreed not to seek further review.[2]  After the show cause hearing and despite its untimeliness, our Supreme Court reviewed the petitioner's application and denied the same on March 23, 2016.[3]  Specifically, the Court's order stated:

> The application for permission to appeal filed by the defendant, Monterious Bell, is untimely.  However, in the interest of justice, the timely filing requirements of Tenn. R. App. P 11(b) are waived.  Upon consideration of the application for permission to appeal of Monterious Bell and the record before us, the application is denied.  Counsel for Mr. Bell, Paul Springer, has filed a motion to withdraw as counsel.  That motion is denied as moot.

The Court, however, failed to issue a mandate ordering the same.

Subsequently, the petitioner filed a *pro se* petition for post-conviction relief on June 31, 2016.[4]  In his petition, the petitioner alleged trial counsel was ineffective in that he: (1) failed to adequately prepare for trial; (2) failed to "pursue any constitutional

---

[1]In the order, the Supreme Court stated the petitioner's Rule 11 application was due no later than April 6, 2015.  *See* Tenn. R. App. P. 11(b).  The Court also denied the petitioner's motion for appointment of counsel, noting the petitioner was still being represented by trial counsel.

[2]A transcript from the show cause hearing is absent from record before this Court.

[3]At the show cause hearing, trial counsel also moved to be dismissed from the petitioner's case. The Supreme Court, however, denied trial counsel's motion as moot.

[4]Though we recognize no such date exists, the petition is file stamped "June 31, 2016." According to the certificate of service, the petitioner gave the petition to prison officials on June 27, 2016. *See* Tenn. R. Crim. P. 49(d).

- 4 -

violations;" (3) failed to file "requested" motions and subpoenas on behalf of the petitioner; (4) failed to properly notify the petitioner that counsel would not file a Rule 11 application or provide the petitioner with records in order for the petitioner to do the same; (5) failed to properly advise the petitioner of an initial offer made by the State and failed to advise the petitioner of the sentence the petitioner faced at trial if rejected; (6) failed to adequately represent the petitioner at the sentencing hearing; and (7) failed to preserve for appeal the trial court's error of "placing undue weight on the [p]etitioner's enhancement factors and totally disregard[ing] [the] [p]etitioner's mitigating factors." The petitioner also alleged he was abandoned by trial counsel, thus tolling his post-conviction statute of limitations. The petitioner asserted trial counsel did not properly withdraw from his case and did not notify the petitioner of his intent not to file a Rule 11 application on the petitioner's behalf. The petitioner also asserted trial counsel "impeded [the] [p]etitioner's diligent efforts to file a timely petition." Finally, the petitioner asserts because of prison "lock downs," he "has been denied access to the prison library, legal materials." In support of his post-conviction claims, the petitioner attached two documents indicating the South Central Correction Center, where he was housed, was on lock down on January 27, 2016 and March 17, 2016. The post-conviction court summarily dismissed the petition as untimely, and this *pro se* appeal followed.

## ANALYSIS

On appeal, the petitioner asserts his lack of knowledge of post-conviction procedure and due process concerns tolled the one-year statute of limitations for his post-conviction claims. The petitioner states as "a poorly educated layman," he failed to understand the one-year statute of limitations applicable to his post-conviction claims and "depended solely on counsel's instruction." Further, the petitioner states during the time period in which he had to file his post-conviction petition, he believed he was still represented by counsel, and as such, could not proceed with a *pro se* petition. Additionally, the petitioner complains that various inconveniences while he was incarcerated also led to his untimely post-conviction petition. The State argues the petition for post-conviction relief was untimely under *Williams v. State* and that no facts exist to support due process tolling of the one-year statute of limitations. 44 S.W.3d 464, 470-71 (Tenn. 2001). Upon our review of the record, we conclude the petitioner filed a timely petition for post-conviction relief. However, because the post-conviction court summarily dismissed the petition, we remand this matter to the trial court for proceedings consistent with this opinion.

A post-conviction petitioner has one year from "the date of the final action of the highest state appellate court to which an appeal is taken" to file a petition for relief. Tenn. Code Ann. § 40-30-102(a). "Time is of the essence of the right to file a petition for post-conviction relief." *Id.* Untimely filing of a post-conviction petition extinguishes a

- 5 -

petitioner's post-conviction claims unless a petitioner can establish he is entitled to due process tolling of the statute of limitations. *Id.* The Tennessee Supreme Court has outlined limited circumstances which call for due process tolling of untimely post-conviction petitions. One such circumstance allows a petitioner to prove his post-conviction petition was untimely due to attorney misrepresentation. *Williams*, 44 S.W.3d at 470-71. In order to succeed, a petitioner must provide sufficient facts which prove attorney misrepresentation affected the filing of his post-conviction petition. Tenn. Code Ann. § 40-30-104. Absent sufficient facts establishing a petitioner is entitled to due process tolling, an untimely petition must be dismissed. *Eddie Williams v. State*, No. W2011-00202-CCA-R3-PC, 2011 WL 2410364, at *1-2 (Tenn. Crim. App. June 9, 2011), *perm. app. denied*, (Tenn. Oct. 18, 2011).

On appeal, the State argues the petitioner's post-conviction petition was correctly dismissed by the post-conviction court as it was untimely filed pursuant to *Williams v. State*. 44 S.W.3d at 470-71. Upon our review of the record and applicable law, however, we disagree. In *Williams*, the petitioner filed an untimely post-conviction petition after his Rule 11 petition was dismissed as time-barred. *Id.* at 465. In the context of a Rule 11 dismissal, the *Williams* court "emphasize[d] that under no circumstance are we allowing a petitioner to file an *untimely* application for permission to appeal with the belief that the one-year post-conviction statute would commence upon this Court's *dismissal* of that untimely application." *Id.* at 471 (emphasis added). Further, the *Williams* court stated the untimely filing of an application for permission to appeal to the Tennessee Supreme Court "does not constitute 'an appeal' as that term is used in Tennessee Code Annotated § 40-30-[1]02(a) and therefore does not delay commencement of the one-year post-conviction statute of limitations." *Id.*

In this case, however, the record shows, "[u]pon consideration of the [Rule 11] application," our Supreme Court *denied* the petitioner's application for permission to appeal. Rather than simply dismissing the petitioner's Rule 11 application as in *Williams*, here, our Supreme Court reviewed the petitioner's Rule 11 application and denied it upon consideration of the merits. As such, we conclude the present facts differ from *Williams* and therefore, a different result is warranted. Because our Supreme Court considered and ruled on the petitioner's Rule 11 application, albeit a denial, the Court's order of March 23, 2016 constituted "the date of the final action of the highest state appellate court to which an appeal [was] taken." Tenn. Code Ann. § 40-30-102(a). Accordingly, the petitioner had until March 23, 2017, to file his petition for post-conviction relief. *Id.* The petitioner's June 31, 2016 petition for post-conviction relief was, therefore, timely filed.[5] Accordingly, because the post-conviction court summarily

---

[5]See footnote 4.

dismissed the petition, we remand the case to the post-conviction court for consideration of the petition in accord with the Post-Conviction Procedure Act.

## **CONCLUSION**

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is reversed and remanded.

_____
J. ROSS DYER, JUDGE